UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

REGINA CLAYWELL )
)
V. ) NO. 2:10-CV-2
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's claim for supplemental security income was denied by the Commissioner following a hearing before an Administrative Law Judge. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 29 years old at the time of the denial of her application. She has a 9th grade or "limited" education. The ALJ found that the plaintiff had past relevant work experience as a cook, which was skilled and required medium exertion; as a material handler, which was unskilled and heavy; as a stock clerk, which was unskilled and medium; and as a dishwasher, which was unskilled and light.[1]

Plaintiff alleges that she became disabled on November 6, 2006. She alleges that she has the following severe impairments: right arm pain, scoliosis, related back pain, dysthmic disorder and anxiety.

Plaintiff's medical records prior to the ALJ's adverse decision are summarized by the plaintiff in her memorandum as follows:

> Plaintiff received treatment at Hawkins County Memorial Hospital on seven occasions from January 16, 2005 through July 6, 2005. Treatment was rendered for chest pain, anxiety, chronic back pain, bronchitis, sinusitis, migraine headache, urinary tract infection, depression, and suicidal thoughts (Tr. 141-189). Plaintiff required involuntary commitment on July 6, 2005, after she presented complaining that she couldn't sleep or eat and was stressed. Plaintiff was tearful; she stated she that felt she was losing her mind; she reported chest pressure; she sometimes wished God wouldn't let her wake up; and she was noted to feel worthless and to have forgotten what it is like to be happy. Crisis consultation yielded the diagnoses of depression NOS by history, rule out personality disorder, and polysubstance dependence by history; with a global assessment of functioning [hereinafter "GAF"] of 28 (Tr. 141-156).
> Plaintiff received treatment at Hawkins County Memorial Hospital eight times from February 19, 2006 through September 20, 2006, due to fractured finger on right

---

[1] The plaintiff contests the finding that her dishwashing job constitutes past relevant work. That will be addressed herein.

hand, right hand pain following fracture repair surgery, headache, right upper arm laceration, continued right arm/elbow pain following repair of laceration, right wrist pain and swelling, and possible neuropathic pain (Tr. 190-268).

Plaintiff presented to North Side Hospital on November 3, 2006, with complaints of right wrist pain and swelling. The diagnosis was right lateral epicondylitis (Tr. 278-285). Plaintiff returned on November 10, 2006, complaining of chronic right elbow pain. The diagnosis was right elbow tendonitis (Tr. 269-277).

Plaintiff underwent consultative exam by Dr. Charlton Stanley on February 4, 2007. Presenting problems included panic and anxiety attacks. Plaintiff had fair hygiene and grooming; she said she has good days and bad days; she began to cry when asked about her childhood and reported she had very few friends and it was hard to make friends because she was always extremely shy; she said that she feels that people make fun of her; and she reported a history of abuse. Plaintiff was noted to have quit school in the ninth grade to get married; to have been in special education all the way through school; and to have only held five jobs in her lifetime. Plaintiff could get an extremely easy proverb, but on more difficult ones she gave extremely literal responses; she did not seem to understand how to do subtractions; she could not do serial 7's, serial 3's, or count backwards from 100; her thought processes were rather concrete; her executive thinking function was rated as fair; her affect was generally dysphoric; she was tearful and burst into tears several times, especially when talking about her childhood and being shy, as well as about being raped by an in-law; and her attention span was rated as fair. Plaintiff's anxiety was elevated; her fingernails were chewed off into the quick; she fidgeted and was restless throughout the interview; she described symptoms that include worry, tension, shortness of breath, palpitations, weakness, muscle tension, trouble concentrating, getting tired easily, and sleep disturbance; and she reported having panic attacks. Depression was also noted, with Plaintiff admitting to weeping easily and saying the depression and crying comes in spells. The diagnoses were dysthymic disorder, anxiety disorder not otherwise specified, probable learning disorder, and personality disorder not otherwise specified, with a current GAF of 55. Dr. Stanley opined Plaintiff appears capable of understanding simple information or directions; her ability to maintain persistence and concentration on tasks for a full workday and workweek is probably impaired; her social relationships are mildly impaired; and she probably can manage her own funds (Tr. 296-302).

On February 24, 2007, a reviewing state agency psychologist [Dorothy D. Tucker, Ph.D.] opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others (Tr. 303-320).

Plaintiff underwent consultative exam by Dr. Marianne E. Filka on May 10, 2007. Presenting complaints included constant mid back pain and constant discomfort radiating down the right arm all the way to the fingers. Review of systems was positive for weight

3

loss, hair loss, headaches, eye pain, double vision, ringing in the ears, neck pain and stiffness, hot flashes, pain in joints, easy bruising, staying cold all the time, anxiety, panic attacks, depression, and poor appetite. On exam, Plaintiff was 60 inches tall and weighed 88.2 pounds; the right 5th finger had a bit of a nubby appearance to the PIP and DIP joints, with a slight varus to the distal phalanx and decreased range of motion; there was some tenderness to the left knee joint; there was mild levoscoliosis in the thoracic or lumbar area; and there was tenderness to the thoracic area, soft tissues, and mid thoracic spinous process. The diagnoses were chronic mid back pain with mild levoscoliosis; chronic right arm neuralgias status post laceration; anxiety with panic attacks; status post hysterectomy, tubal ligation, and right 5th finger repair; allergies to penicillin, aspirin, Sulfa, and Darvocet; history of migraine and tension and sinus headaches; and positive depression based on review of systems. Dr. Filka opined Plaintiff has some mild lifting restrictions based on her chronic back pain, with no lifting, pushing, and pulling at over 40 pounds on a repetitive basis (Tr. 321-326).

Dr. Daniel A. Slonaker treated Plaintiff from November 21, 2006 through July 24, 2007. Conditions and complaints addressed during this time include right wrist pain, right elbow pain, right shoulder pain, insomnia, pelvic pain, weight loss, anxiety, headaches, chronic thoracic spine pain, and depression (Tr. 286-295). On July 24, 2007, right shoulder x-rays showed mild decrease in joint spaces (Tr. 287).

On June 7, 2007 and November 12, 2007, two separate non-examining state agency physicians opined Plaintiff's physical impairment(s) are not severe, singly or combined (Tr. 327-334).

On December 10, 2007, Plaintiff underwent consultative exam by Dana Skaggs, M.A. Plaintiff reported that she was placed in an inpatient facility at age 25 for drug abuse, at age 25 for a nervous breakdown, and again at age 25 for another nervous breakdown; that she was in Woodridge Hospital 15 times from age 25 to 28, all for nervous conditions; that she is nervous, anxious, and depressed; that she had a difficult childhood and was made fun of because she was in special education and had speech classes; that she suffered severe physical, emotional, and sexual abuse occurring from age ten to her adult years; and that she completed the ninth grade and made poor grades in school. Plaintiff was unable to answer logic-based problems; she was unable to answer elementary mathematic equations; she was unable to complete serial 7's or serial 3's backwards from 100, but was able to compete counting backwards from 20 to 1 adequately; her short-term memory was not intact; and her affect was dysphoric throughout the interview. Plaintiff reported saying things to people that she does not mean; balling her fist up and screaming, but not hitting people; getting angry for no reason; inability to be around a lot of people; feeling like people are looking and talking about her; decreased concentration and thoughts of suicide; and mood swings. Regarding anxiety and panic symptoms, Plaintiff reported that her chest will become tight, she will experience shortness of breath, and will burst into tears. The diagnoses were social phobia, history of polysubstance use, and rule out borderline intellectual functioning and/or learning disabilities, with a GAF of 60. Ms. Skaggs opined Plaintiff appears to be fully capable of understanding simple information or direction with the ability to put it to full use in a vocational setting; her ability to comprehend and implement multi-step complex instructions is highly impaired; her ability to maintain persistence and concentration on tasks for a full workday and workweek is moderately impaired; she will likely experience panic-like symptoms in large groups or people; and her social

4

relationships are moderately impaired (Tr. 335-341).

On January 29, 2008, a reviewing state agency physician [William Regan, M.D.] opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting (Tr. 342-359).

On February 23, 2006, Plaintiff underwent fixation of a proximal phalangeal fracture of the right fifth finger with closed reduction (Tr. 368). Post surgery x-rays showed K-wires traversing a fracture of the proximal phalanx of the little finger (Tr. 366-367).

Plaintiff received treatment at Holston Valley Medical Center on March 2, 2008, due to presenting complaints of abdominal pain and back pain. The diagnoses were chronic pelvic pain and anxiety (Tr. 362-365).

Plaintiff received treatment at Sycamore Shoals Hospital on six occasions from November 14, 2006 through March 23, 2008. Treatment was rendered for right wrist pain, nephrolithiasis, constipation, chronic lower back pain, pelvic pain, coccyx contusion, and influenza (Tr. 374-423).

Plaintiff required treatment at Indian Path Medical Center five times from October 26, 2006 through April 12, 2008, due to right wrist pain, right shoulder pain, chronic right arm pain, kidney stones, flank pain, and migraine headache (Tr. 424-467).

Doc. 9, Pgs. 2-7.

At the administrative hearing, Dr. Norman Hankins testified as a vocational expert at the instance of the Commissioner. The ALJ asked Dr. Hankins, who had reviewed the plaintiff's file if "there is any relevant work that the claimant has performed, and, if so, what were the mental and physical nature of same?" Dr. Hankins identified several past relevant jobs, including dishwasher. The ALJ then asked him whether that job "would require no more than ability to perform simple, repetitive tasks?" Dr. Hankins answered in the affirmative. [Tr. 545].

Dr. Hankins was then examined by the plaintiff's attorney. He was essentially asked if the plaintiff's "ability to sustain employment would be impacted" if she had the limitations set forth in Exhibit 11f (the report of Dana Skaggs at Tr. 335-341) and Exhibit 6f (the report

5

of Dr. Tucker at Tr. 303-306). Dr. Hankins stated "I would think that she would have difficulty performing any job if she were found to be limited to that degree in all those areas." [Tr. 545-46]. The ALJ then asked Dr. Hankins if "a GAF of 60 would...preclude any of the jobs that she's had in the past..?" He answered that it would not. [Tr. 547].

In his hearing decision, the ALJ found that the plaintiff had severe impairments of right arm pain, scoliosis-related back pain, dysthymic disorder, and anxiety. [Tr. 19]. With respect to the plaintiff's mental impairments, he found that the plaintiff's impairments caused a mild limitation in the area of activities of daily living; a moderate limitation in the area of social functioning; a moderate limitation in the area of concentration, persistance or pace; and no episodes of decompensation. In making this finding the ALJ adopted "the well-supported state agency reviewer findings contained in Exhibits 7f and 13f..." which are the reports of Dr. Tucker and Dr. Regan described above (Tr. 303-320 and 342-359). [Tr. 21]. The ALJ stated that his finding of residual functional capacity "reflects the degree of limitation..." so found. [Tr. 22].

The ALJ found that the plaintiff "has the residual functional capacity to perform a broad range of simple, repetitive light work." [Tr. 22]. Implicit in this finding is a finding that her severe mental impairment did not preclude such work. He relied upon testimony from Dr. Hankins, the vocational expert, that she could perform any of her past relevant jobs if she had a GAF score of 60. [Tr. 25]. The ALJ found that she could return to her past relevant work as a dishwasher in spite of her limitations. He also found that she was not disabled under Section 202.18 of the Medical-Vocational Guidelines (the "Grid"). Accordingly, he found that she was not disabled. [Tr. 26].

6

Plaintiff raises certain objections to the ALJ's findings. First, she says that the ALJ is not supported by substantial evidence regarding his findings regarding plaintiff's mental impairments. Specifically she says that the ALJ did not explain or even address the limitations found by the various mental health experts who opined as to plaintiff's degree of limitation, including the state agency consultants on whom the ALJ relied. Next she says that the ALJ erred in finding that the plaintiff had a past relevant job as a dishwasher and did not adequately explain his rationale for determining that she could perform that job. She also states that the plaintiff's non-exertional impairments prevented the ALJ from making his alternative finding that she was not disabled under Section 202.18 of the Grid.[2]

This case did take some rather unusual turns at the administrative hearing in the examination of Dr. Hankins by both the ALJ and the plaintiff. This Court cannot weigh the evidence, no matter which party would be benefitted. But Dr. Hankins' opinion that the plaintiff could not work as dishwasher, or any other simple, non-stressful occupation, when she had but moderate mental limitations strikes the Court as unusual, and even incredible. But Dr. Hankins made two statements upon which the ALJ "hung his hat." First, he opined that the job as a dishwasher would require no more than an ability to perform simple, repetitive tasks. Then he testified that a person with a GAF of 60 could meet the mental demands of any of plaintiff's past relevant jobs, which included the job of dishwasher. None of the various mental examiners and reviewers came remotely close to indicating that the plaintiff was mentally precluded from substantial gainful activity. The ALJ did in fact adequately discuss in his opinion the limitations opined by them. He simply opined that these

---

[2] Any alleged error not included in the motion before this Court is waived.

limitations did not preclude the performance of the job of diswasher. The Court finds that Dr. Hankins' answers to the ALJ's questions provide substantial evidence for his finding that she could return to her past relevant work as a dishwasher, if in fact that was past relevant work.

As to the second allegation of error, that dishwashing was not past relevant work, the plaintiff testified that she had worked as a dishwasher [Tr. 534]. In her work history report, prepared and executed by her, she stated she was employed as a dishwasher [Tr. 106 and 108]. Dr. Hankins testified that the record indicated past relevant work as a dishwasher [Tr. 545]. No objection was made by plaintiff's able counsel at the hearing, nor did he take Dr. Hankins to task on that aspect of his opinion. In the opinion of the Court, the ALJ is entitled to rely upon the signed filings of a claimant, their testimony, and the lack of contradiction by their counsel in deciding whether a job identified by that claimant constituted past relevant work.

Finally, the plaintiff asserts that the Grid was utilized improperly by the defendant, its use being precluded by her non-extertional mental impairments. In the sequential evaluation process, the use of the Grid comes into play at "Step Five," where a plaintiff cannot return to any past relevant work and the burden shifts to the Commissioner to show that there is a significant number of jobs which that plaintiff can perform. Generally, a severe non-exterional impairment precludes the use of the Grid, which is based upon ability to perform a full range of work at a particular level, and requires testimony of a vocational expert to identify a significant number of jobs.

The Commissioner argues that two unreported cases from the Sixth Circuit legitimize

the use of the Grid in this instance. In *Cooper v. Secretary of Health and Human Services*, 1988 WL 27503 (6th Cir. 1988), the ALJ specifically found that the claimant's emotional impairments had not "reached a level of severity to seriously affect her ability to engage in sedentary work." *Id.,* at pg. 1. The Court rejected the plaintiff's argument "that ALJ erred in relying upon the 'grids' and in failing to employ the testimony of a vocational expert once he had found that claimant was affected by both exertional and nonexertional disorders." The Court specifically found that "there is substantial evidence to support the ALJ's finding that claimant's mental impairment did not limit her ability to do a full range of sedentary work, and thus the ALJ was justified in relying upon the grids." *Id.*, at pg. 5. There, unlike here, the ALJ found that the plaintiff did not have a severe mental impairment and that she could do the full range of sedentary work. The fact that the ALJ in the present case limited plaintiff to simple, repetitive light work shows that her impairment was severe or else he would have found she could perform the full range of light work.

The other unreported case, *Ackley v. Secretary of Health and Human Services*, 1991 WL 21976, (6th Cir. 1991) involved a vocational expert identifying a number of "less stressful" jobs that the plaintiff could perform and the adequacy of the hypothetical posed by the ALJ to the VE. Although the terseness of the opinion makes it difficult to fathom the precise argument made by the plaintiff, the Sixth Circuit quoted a Fourth Circuit case, apparently as dicta, in stating "[m]oreover, the existence of uncomplicated and non-stressful jobs is a fact that is "within the common knowledge and experience of ordinary men, and requires no substantiation by a vocational expert." *Id.*, at pg. 2, quoting *McLamore v. Weinberger,* 538 F.2d 572, 575 (4th Cir. 1976). In Ms. Claywell's case, the Court is

9

unwilling to rely upon a "throwaway" line in an unreported one page opinion which strays so far, and without explanation, from the well known and applied jurisprudence in this Circuit.

These cases appear factually inapposite to the present case. This Court is also reluctant to dispense with the normal requirements set out in *Damron v. Secretary of Health & Human Services*, 778 F.2d 279 (6th Cir. 1985) and others from this Circuit requiring vocational expert testimony when the full range of work at a particular level is precluded by a non-exertional impairment. Therefore, the Court agrees with the plaintiff on this point.

However, since the Court finds that there was substantial evidence to support the ALJ's Step Four determination that the plaintiff could return to her past relevant work, and that dishwashing was in fact past relevant work, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[3]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(B) and (C).